**Lowell L. WORMAN and Evelyn C. Worman, Plaintiffs,**

v.

**FARMERS COOPERATIVE ASSOCIATION, a Wyoming non-profit corporation, Don R. Hamm, Robert L. Sorenson, Robert Tarver, Guy W. Edwards, Joy Lynn Voiles, and D.R. Spellman, Individually and in their capacity as Directors of Farmers Cooperative Association, and John Does 1 through 10, Defendants.**

No. 97–CV–1068.

United States District Court, D. Wyoming.

May 11, 1998.

Drew A. Perkins, Casper, WY, for Plaintiff.

James L. Edwards, Gillette, WY, for Defendant.

## ORDER ON MOTION TO DISMISS

BRIMMER, District Judge.

### *Background*

Plaintiff Lowell Worman was employed by Defendant Farmers Cooperative Association

from 1951 until 1995. From 1956 until the time of his discharge, Worman's employment was governed by an "Elevator Manager's Agreement" (the Agreement). Plaintiff Evelyn Worman, Lowell's wife, was employed as a bookkeeper for Farmers from 1971 until 1995. Mr. Worman claims that when Defendants Hamm, Sorenson, Tarver, Edwards, Voiles, and Spellman (the Individual Defendants) were elected to or became involved with Farmers' board of directors in 1991, these individuals encroached on his managerial duties as defined by the Agreement and pressured him to resign. According to Mr. Worman, at some point he and the Directors agreed that Mr. Worman would retire May 31, 1997. Mr. Worman was fired, however, in February 1995. According to Mr. Worman, the Board of Directors ultimately replaced him with a younger worker. Mrs. Worman was fired on January 21, 1995. She too was replaced by someone younger.

Both Plaintiffs filed an age discrimination charge with the EEOC, and obtained a right to sue letter. Plaintiffs now bring claims against Farmers as well as the individual board members, for violation of the Age Discrimination in Employment Act, breach of contract, and breach of the covenant of good faith and fair dealing. Currently before the Court is the Motion to Dismiss of the Individual Defendants. These Defendants essentially argue that the proper action is not against them as individuals but against their employer, Farmers.

### Standard of Review

In considering a motion to dismiss, the Court must accept as true all of the plaintiff's well-pleaded factual allegations. A motion to dismiss should be granted only if it appears the plaintiff can set forth no set of facts entitling that plaintiff to the relief sought. See Duart v. FMC Wyoming Corp., 859 F.Supp. 1447, 1453–54 (D.Wyo.1994).

### Analysis

**1. Age Discrimination in Employment Act (ADEA)**

■ The Tenth Circuit briefly addressed the issue of individual liability for purported ADEA violations in Brownlee v. Lear Siegler Management Servs. Corp., 15 F.3d 976 (1994). There, the court stated in passing that although "a principal's status as an employer can be attributed to its agent to make the agent statutorily liable for his own age-discriminatory conduct, . . . we know of no authority for imputing a principal's discriminatory intent to an agent to make the agent liable for his otherwise neutral business decision." Id. at 978. Thus, the court insinuated that at least in some circumstances the potential for individual liability under ADEA may exist.

This brief decree has generated some consternation among courts deciding what weight to assign it, particularly in light of the Tenth Circuit's expression in Sauers v. Salt Lake County, that "relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." 1 F.3d 1122, 1125 (1993). The Sauers court further opined: "We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." Id. Because it is settled that the Tenth Circuit interprets ADEA in tandem with Title VII, see Ellis v. United Airlines Inc., 73 F.3d 999, 1007 (10th Cir.1996), it logically follows that individual liability suits would be disallowed under ADEA as well.

In any event, a district court in this circuit has very fairly read Brownlee as suggesting that where the individual supervisor has the power to wield "employer-like" authority, such as hiring and firing, the supervisor may be considered an employer for ADEA purposes. See Newsome v. McKesson Corp., 932 F.Supp. 1339, 1342–43 (D.Utah 1996). That court, however, did not appear to have knowledge of what was then only a very recent Tenth Circuit opinion in Haynes v. Williams, 88 F.3d 898 (1996). The panel in Haynes noted the apparent conflict between Sauers and Brownlee, and for all intents and purposes disavowed Brownlee insofar as it could be read to impose individual liability in these circumstances. In doing so, the court stated:

"Brownlee 's reference to the agent's potential status as employer need not be read

as a deviation from prior precedent" [i.e., *Sauers* ]. First of all, *Brownlee* referred to the attribution of statutory employer status to an agent simply as an aside; it was not the holding of the case. Moreover, despite its use of the personal pronoun ..., *Brownlee* could only have been positing a corporate entity (the defendant management services company that hired the plaintiffs to work for the foreign sovereign), not an individual supervisor, as the agent capable of assuming the principal's status as statutory employer.... Thus, *Sauers'* specific holding, that "individual capacity suits are inappropriate," ... did not preclude (or entail) *Brownlee*'s incidental statements about agents generally.

Finally, even if the cases were squarely in conflict, this circuit's rules regarding panel precedent would direct our adherence to *Sauers* in any event.

*Id.* at 900.

This Court concludes, as has one other in this circuit, *see Russell v. Midwest–Werner & Pfleiderer, Inc.,* 949 F.Supp. 792, 800 (D.Kan.1996), that *Haynes* expresses clearly that the *Sauers* rule precluding individual liability governs the more general dictum of *Brownlee.* Consequently, the age discrimination claim asserted by Plaintiffs against the Individual Defendants is dismissed.

## 2. Breach of Contract

 Plaintiffs bring a claim for breach of contract against the Individual Defendants. Neither Plaintiff, however, can establish a prima facie case of breach of contract, which presupposes that some contract does in fact exist between the Plaintiff and the party charged with the breach. *See, e.g., Reynolds v. Tice,* 595 P.2d 1318, 1323 (Wyo.1979). It is not disputed here that any contracts of employment between Plaintiffs and Farmers were entered into only by those parties, and not by any of the Individual Defendants. It is axiomatic that an individual not a party to a contract may not be held liable for a breach of that contract.

Moreover, to the extent Plaintiffs rely on *Dynan v. Rocky Mtn. Fed'l Savings & Loan,*

792 P.2d 631 (Wyo.1990), *Chasson v. Community Action,* 768 P.2d 572 (Wyo.1989), and *Davenport v. Epperly,* 744 P.2d 1110 (Wyo. 1987), that reliance is misplaced. Those cases all state unambiguously that with respect to the individual defendants the claim at issue was not breach of contract but intentional interference with contract. Here, the inclusion in Plaintiffs' complaint of an interference with contract claim against a third-party not involved in this motion precludes the possibility that Plaintiffs' breach of contract claim is in essence an interference claim. Had Plaintiffs intended to seek relief on an interference claim as opposed to a breach of contract claim, the Court is confident Plaintiffs would have so asserted in their complaint.

 Furthermore, the Court notes that Plaintiffs' allegations are insufficient to make the requisite interference claim showing that the Individual Defendants were acting not on behalf of Farmers or within the scope of their employment, but for their own personal benefit. *See Davenport,* 744 P.2d at 1114. The only allegation that could even remotely permit a rational person to infer the existence of a personal vendetta against Mr. Worman is that allegation claiming that following Mr. Worman's discharge Defendants Hamm and Voiles attempted to appoint a "personal friend" to Mr. Worman's former post. *See* Complaint ¶ 12. There is no indication in the Complaint that this post-discharge conduct was in any way related to the decision to terminate Mr. Worman's employment. This allegation is further weakened by the fact that the Farmers' Board of Directors can only act pursuant to majority vote; thus, Hamm and Voiles alone could not have successfully replaced Mr. Worman with the so-called "personal friend." *See Dynan,* 792 P.2d at 641. Indeed, this "personal friend" of Hamm and Voiles ultimately did not fill Mr. Worman's former position. In short, there is no credible indication from the allegations that any of the Individual Defendants gained any personal advantage because of Mr. Worman's dismissal or acted out of sheer personal malice or simply in an attempt to carry out a personal vendetta against Mr. Worman; the allegations permit only the in-

ference that in discharging Mr. Worman, these individuals were acting in their official capacity as the directing body of Defendant Farmers. *See Chasson,* 768 P.2d at 578–79.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

 Plaintiffs also seek recovery against the Individual Defendants on a breach of implied covenant of good faith and fair dealing claim. The Wyoming Supreme Court has recognized that inherent in every contract for employment is a covenant by the parties to act fairly and in good faith. *See Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 220 (Wyo.1994). This claim, however, suffers the same deficiency as does the breach of contract claim: the Individual Defendants are not parties to any contract that existed between Plaintiffs and Farmers, and thus cannot be said to have breached any covenant related to such contract. Moreover, of the vast number of Wyoming Supreme Court cases to have considered good faith and fair dealing claims, not one has even hinted that an individual employee or supervisor could be liable under such a cause of action. *See, e.g., Terry v. Pioneer Press,* 947 P.2d 273, 277 (Wyo.1997) (noting that "bad motives of an *employer* may be actionable in limited circumstances under a claim for breach of the implied covenant of good faith and fair dealing"); *Loghry v. Unicover Corp.,* 927 P.2d 706, 712 (Wyo.1996) (same). Instead, these cases have spoken solely in terms of employer liability. *See, e.g., Kahrs v. Board of Trustees,* 901 P.2d 404 (Wyo. 1995) (dismissed teacher sued school board as entity, rather than individual board members, for breach of implied covenant of good faith and fair dealing claim arising from termination of her employment). For these reasons, as well as out of respect for the Wyoming Supreme Court's right to decide novel issues of Wyoming law, the Court is reluctant to, and will not, unilaterally extend liability under this claim to individual supervisors or employees.

### *Conclusion*

Based on the foregoing, the Court **ORDERS** that the Motion to Dismiss filed by Defendants Hamm, Sorenson, Tarver, Edwards, Voiles, and Spellman is **GRANTED** in its entirety.